IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LISA JENKINS, | : | CIVIL ACTION |
| Plaintiff, | : : : | |
| v. | : : | NO. 06-0987 |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY, | : : : | |
| Defendant. | : | |

**MEMORANDUM**

BUCKWALTER S. J.                                                                                             January 7, 2008

Currently before the Court are Plaintiff's Objections to the Report and Recommendation of United States Magistrate Judge M. Faith Angell. For the reasons set forth below, the Objections are overruled and the Magistrate Judge's Report and Recommendation is approved and adopted.

## I.   PROCEDURAL HISTORY

Following a work injury and subsequent period of unemployment, thirty-seven year-old Plaintiff Lisa Jenkins filed for Supplemental Security Income ("SSI") on January 9, 2003, pursuant to Title XVI of the Social Security Act. 42 U.S.C. § 301, *et seq*. The state agency denied her claim on May 18, 2003. (R. 25-28.) An administrative hearing was held before Administrative Law Judge ("ALJ") Richard A. Kelly, who also denied benefits. (Id. 12-20, 316-51.) The Appeals Council dismissed Plaintiff's request for review, and, on July 30, 2004, Plaintiff initiated a civil action in this Court. Upon consideration of the record, Magistrate Judge Diane Welsh filed a Report and Recommendation ("R&R") suggesting that the case be remanded for further consideration of both the impact of Plaintiff's obesity and the credibility of her testimony. The undersigned approved that R&R on March 14, 2005.

Upon return to the Social Security Administration, Plaintiff's application underwent a second hearing on September 7, 2005.  (Id. at 540-65.)  ALJ Kelly again denied benefits in a decision dated November 1, 2005.  (Id. at 352-55.)   The Appeals Council declined review, and Plaintiff filed a new action in this Court.  The matter was referred to Magistrate Judge M. Faith Angell, who issued a new R&R, dated August 21, 2007, finding no error in the ALJ's analysis.

Plaintiff now raises five objections:  (1) the Magistrate Judge[1] misstated and improperly summarized the ALJ's findings; (2) the Magistrate Judge improperly concluded that the ALJ adequately considered her bilateral carpal tunnel syndrome; (3) the Magistrate Judge improperly upheld the ALJ's failure to list degenerative joint disease of the left knee as a severe impairment; (4) the Magistrate Judge incorrectly found that the ALJ complied with the remand order when engaging in a credibility analysis; and (5) the ALJ failed to obtain a medical expert to assess whether Plaintiff's obesity, in combination with her other impairments, equaled one of the Listing of Impairments in 20 C.F.R. Part 40, Subpart P, Appendix 1.  Having engaged in a thorough review of the objections, the Magistrate Judge's R&R and the various briefing by the parties, the Court agrees with the ultimate conclusion reached in the R&R.  For purposes of comprehensiveness, however, we address each of the Plaintiff's individual objections.[2]

## II.   DISCUSSION

### A.   Whether the Magistrate Judge Misstated and Inaccurately Summarized the ALJ's Findings

In her first objection, Plaintiff contends that the Magistrate Judge improperly summarized

---

[1] Any references to the "Magistrate Judge" will mean Magistrate Judge Angell.

[2] The medical record, ALJ's findings, legal framework for assessing a disability claim and standard of review of an administrative decision were properly summarized by the Magistrate Judge.  Accordingly, the Court incorporates them by reference into this opinion.

the ALJ's decision. Specifically, the R&R, citing the ALJ's step two finding, identified two of Plaintiff's impairments as "severe" under the Regulations: (1) "a right knee impairment from degenerative joint disease" and (2) "degenerative disc disease of the lumbar spine." (R&R 5.) As noted by Plaintiff, however, this statement improperly quoted from the ALJ's original 2004 decision. The subsequent decision, dated November 1, 2005, actually found that Plaintiff had four severe impairments: (1) a right knee impairment from degenerative joint disease of mild to moderate severity, (2) status post carpal tunnel release surgery on the left, (3) a back impairment and (4) obesity. (R. 370.)

The Court finds no reversible error. The mere fact that the Magistrate Judge mistakenly quoted from the ALJ's step two finding in the January 2004 decision rather than from the November 2005 decision had no impact on the validity of the ALJ's latter decision. Even Plaintiff acknowledges that the ALJ's addition of the other impairments as severe is not objectionable. Rather, she challenges only the ALJ's failure to find several additional impairments to be severe - an argument discussed more thoroughly in the following sections.

> B. **Whether the Magistrate Judge and ALJ Improperly Disregarded the Impact of Plaintiff's Carpal Tunnel Syndrome Prior to Surgery**

Plaintiff next objects to the Magistrate Judge's conclusion that the ALJ adequately considered her carpal tunnel syndrome. The ALJ characterized Plaintiff's carpal tunnel impairments as "status-post carpal tunnel release surgery on the left, performed on December 9, 2004." (R. 370.) Plaintiff now contends that, by virtue of this finding, the ALJ only discussed the surgery itself and post-surgical treatment, ignoring her documented complaints of an increasingly severe bilateral carpal tunnel impairment from May 2003 through the surgery in December 2004.

On consideration of this issue, the Magistrate Judge found nothing in the record to indicate

that Plaintiff's wrist condition was severe until November 2004, when Plaintiff consulted with a specialist and underwent carpal tunnel release. Accordingly, the Magistrate Judge concluded that the ALJ did not err in declining to consider Plaintiff's pre-surgery carpal tunnel syndrome as a severe impairment.

Step two of the sequential analysis places a burden on the claimant to show that her impairment is severe. 20 C.F.R. § 416.920(c). An impairment is "severe" when it is "of a magnitude sufficient to limit significantly the individual's 'physical or mental ability to do basic work activities.'" Santise v. Schweiker, 676 F.2d 925, 927 (3d Cir. 1982) (quotations omitted). Conversely, a non-severe impairment does not significantly limit or has only a minimal effect on a claimant's physical or mental ability to do basic work activities.[3] 20 C.F.R. § 416.921(a); see also Bowen v. Yuckert, 482 U.S. 137, 154 n.12, 107 S. Ct. 2287, 2298 n.12 (1987). In addition, the impairment must be expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); see also Brewster v. Heckler, 786 F.2d 581, 583 (3d Cir. 1986).

Relying on such legal precepts, the Court finds no basis on which to disagree with the Magistrate Judge. As a preliminary matter, the ALJ did not completely disregard Plaintiff's carpal tunnel syndrome. To the contrary, he expressly deemed it to be a severe impairment, but found no resultant restrictions. Although Plaintiff now contends that the ALJ ignored pre-surgery wrist symptoms, she fails to elucidate how the condition "significantly limited" her physical ability to perform basic work activities. See Santise, 676 F.2d at 927. Indeed, the evidence on the record

---

[3] These basic work activities include: "(1) [p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) [c]apacities for seeing, hearing, and speaking; (3) [u]nderstanding, carrying out, and remembering simple instructions; (4) [u]se of judgment; (5) [r]esponding appropriately to supervision, co-workers and usual work situations; and (6) [d]ealing with changes in a routine work setting." 20 C.F.R. § 416.921(b).

reflects nothing more than a minimal impact. On August 14, 2002, Plaintiff first reported to Dr. Kaplan that she had undergone right carpal tunnel release surgery one year earlier and was able to return to her normal work activities. (R. 207-10.) Physical examination showed good range of motion in her wrists and fingers. (Id.) Thereafter, two consultative examiners concluded, in October 2002 and February 2003 respectively, that all of Plaintiff's joints showed full range of motion, she was able to reach, handle, finger and feel, and she was able to perform fine dexterous movements. (Id. at 213, 289.) On May 12, 2003, Plaintiff first reported to her primary doctor, Kathleen King, that her left wrist was hurting most of the time, yet no limitations were imposed and no treatment given. (Id. at 449-50.) Five months later, Plaintiff repeated her complaints, and Dr. King, suspecting carpal tunnel syndrome, instructed her to use wrist braces. (Id.) Another three and a half months passed, until February of 2004, before Plaintiff made any further complaints. (Id. at 458-59.) At that time, Dr. King sent her for an EMG, which showed median neuropathy at the wrists bilaterally. (Id. at 458-59, 483-84.) Although the doctor suggested orthopedic referral, Plaintiff opted to try "consistent" brace use before going for a surgical evaluation. (Id. at 458-59.) On May 10, 2004, after telling her doctor that the brace was not helping, Plaintiff was given a referral to orthopedist David Bozentka. (Id. at 460-61). Nonetheless, she waited six more months before consulting with Dr. Bozentka. (Id. at 417-18.) He diagnosed her with bilateral carpal tunnel syndrome, but his examination showed no locking or triggering of the digits on the left, good strength of the various muscle groups in both extremities, negative Tinel's sign and canal compression test on the right and no atrophy. (Id. at 417). Immediately following the surgery on her left hand, Plaintiff reported significant improvement in numbness and tingling, good digital range of motion and good thumb opposition strength. (Id. at 415-16, 529, 533.) Six weeks later,

Dr. Bozentka told Plaintiff that she could progress her activities and begin to wean from the splint. (Id. at 530.)

While the ALJ should have perhaps engaged in a more thorough discussion of this evidence, the Court agrees with the Magistrate Judge that remand for additional analysis is simply unwarranted on the face of the record.  See Rutherford v. Barnhart, 399 F.3d 546, 553 (3d Cir. 2005) (holding that where error by ALJ is harmless and would not affect the outcome of the case, remand is not warranted); Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989) (stating that "[n]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result.").  Mere diagnosis of a condition, without more, does not establish severity.  Kuhn v. Barnhart, Civ. A. No. 02-6873, 2004 WL 414069, at *8 (E.D. Pa. Mar. 3, 2004).  Plaintiff has thus not met her burden of proving that her pre-surgery carpal tunnel syndrome had more than a minimal impact on her ability to perform work-related activities, particularly given her lack of efforts to obtain treatment.  Further, Plaintiff has failed to show that any possible pre-surgical severity lasted for the required minimum period of twelve months.  Absent evidence suggesting otherwise, the ALJ had no obligation to consider Plaintiff's alleged wrist limitations.

  C. **Whether the Magistrate Judge and the ALJ Improperly Failed to Consider Plaintiff's Left Knee Impairment**

In a similar vein, Plaintiff objects to the Magistrate Judge's conclusion that the ALJ properly evaluated her knee limitations.  The ALJ found, among Plaintiff's severe impairments, degenerative joint disease of the right knee.  In doing so, the ALJ omitted any mention of Plaintiff's left knee pain.  Plaintiff now contends that this omission was speculative and not based on any discussion of the pertinent medical evidence.

On thorough consideration of the record, the Magistrate Judge concluded that the ALJ could not have discussed the evidence regarding Plaintiff's left knee impairment extensively because such evidence did not exist. To the extent there was mention of left knee problems in the record, the Magistrate Judge found that it did not meet Plaintiff's burden of proving a severe impairment.

Again, the Court agrees. From the earliest medical history of record in January 2002 to at least February 2004, Plaintiff complained only of right knee pain. In April, Plaintiff was found to ambulate with a fairly normal gait and stance. (R. 126.) In August 2002, Dr. Kaplan noted that Plaintiff had good mobility in her knees and ankles, but some pain in only the right knee with resisted activity. (Id. at 207-10.)   When she first met with specialist Dr. Israelite, she again complained of pain only in her right knee. (Id. at 205-06.) During her October 2002 independent medical examination, Dr. Pearl examined both knees and found synovial thickening and osteoarthritic changes only about her right knee. (Id. at 285-89.) Flexion and extension in her left knee, as well as all other tests, were normal. (Id.) Plaintiff mentioned to Dr. King, once in May 2003 and once in October 2003, that she again had only right knee pain. (Id. at 449-50, 453-54.)

Indeed, Plaintiff's first mention of left knee pain occurred on September 23, 2004, when she told Dr. King that her left knee was bothering her "like [she] pulled something." (Id. at 465-66). Although a study the following day showed moderate bilateral osteoarthritis and chondromalacia patella,[4] Plaintiff pursued no further treatment. (Id. at 487-90.) In fact, on November 18, 2004,

---

[4] As Plaintiff points out, the ALJ incorrectly stated in his opinion that "[t]he last X-ray of the right knee was done in 2002." (R. 372.) In actuality, Plaintiff had an x-ray of both knees in September of 2004, which showed bilateral osteoarthritis. (Id. at 465-66.) Nonetheless, the Court finds that this omission had no impact on the outcome of the decision. The ALJ agreed that Plaintiff had a severe right knee impairment. The mere diagnosis of moderate arthritis in the left knee does not overcome the otherwise silent record on this condition, so as to require the ALJ to label it a severe impairment.

Plaintiff reported that her knee degenerative joint disease was doing well with her weight loss. (Id. at 468-69.) Her next and last complaint of knee pain was on July 13, 2005, at which time her primary doctor noted knee pain primarily on the right. (Id. at 480-81). While she cursorily mentioned, at the second administrative hearing, that she receives injections in both knees, she produced no medical records of any such treatment. (Id. at 551.)

An ALJ is not required to construct a plaintiff's medical record out of whole cloth. Plaintiff's one-time mention of left knee pain to her doctor, accompanied by a radiologic finding of some moderate osteoarthritis and some isolated hearing testimony suggesting bilateral knee pain, did not automatically obligate the ALJ to develop additional evidence demonstrating the severity of this impairment. "[T]he claimant bears the initial burden of proving the existence of a medically determinable condition which is expected to continuously last for not less than twelve months." Rotshteyn v. Massanari, 158 F. Supp.2d 525, 531 (E.D. Pa. 2001). "The determination of severity is made with reference to a claimant's functional capabilities" and does not turn on the mere existence of some objective medical condition. Kuhn, 2004 WL 414069, at *8. Therefore, the Court declines to remand on this ground.

     **D.**    **Whether the Magistrate Judge Incorrectly Found that the ALJ's Credibility Analysis in His Second Decision Complied with the Remand Order**

Plaintiff's fourth objection asserts that the Magistrate Judge improperly concluded that the ALJ's analysis of Plaintiff's credibility was supported by substantial evidence. As foundation for this argument, Plaintiff identifies three alleged errors in the ALJ's analysis: (1) it was flawed to the extent it did not consider the impact of Plaintiff's left knee and wrist impairments; (2) it did not comply with the remand order, which required that the ALJ cite to probative evidence in the record; and (3) it disregarded the multiple opinions of doctors in support of her credibility. The Court finds

that none of these arguments have merit.

First, Plaintiff contends that the ALJ's failure to correctly identify Plaintiff's severe impairments precluded him from making a viable evaluation of her credibility. As discussed in detail above, however, the ALJ's omission of Plaintiff's alleged left knee condition and pre-surgical carpal tunnel syndrome from the list of severe impairments was supported by substantial evidence. Thus, his disregard of her complaints of pain and limitation purportedly caused by such impairments is likewise not in error.

Second, the ALJ's credibility analysis clearly comported with the remand order. The first R&R instructed the ALJ to "explicitly consider all of the evidence in the record which 20 C.F.R. § 416.929(c) and SSR 96-7p indicate is relevant to evaluating the plaintiff's credibility and . . . take care to explicitly cite this evidence when explaining is credibility determination." (Welsh R&R 11-12.)[5] In response, the ALJ issued a new decision which, far from rejecting Plaintiff's subjective complaints, explicitly found that Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms. (R. 373.) As a result, the ALJ gave her the extremely limited residual functional capacity of sedentary work with a sit-stand option. (Id.) The ALJ then went on to discount her testimony only to the extent it rendered her completely disabled. In support of this finding, he cited to Plaintiff's exaggeration of her limitations, benign physical findings and objective testing, the opinions of multiple treating physicians that Plaintiff had an ability to perform some work if available, Plaintiff's activities of daily living including her ability to do some household chores, her spotty work history, her expressed interest in returning to

---

[5] While Plaintiff correctly notes that the current R&R engages in some impermissible *post-hoc* rationalization of the ALJ's decision, see Newton v. Apfel, 209 F.3d 448, 455 (3d Cir. 2000), the Court recognizes that it does so in an attempt to underscore the validity of the ALJ's credibility analysis.

employment and her attendance at classes to obtain a high school diploma. (Id. at 371-73.)[6]  As these factors are explicitly enumerated in 20 C.F.R. § 416.929(c)(3) and Social Security Ruling 96-7p,[7] the ALJ's analysis satisfies a substantial evidence review. Monsour Medical Ctr. v. Heckler, 806 F.2d 1185, 1190 (3d Cir. 1986) (holding that judicial review of the Commissioner's decision is limited to determining whether "substantial evidence" supports the decision).

Finally, to the extent that Plaintiff contends that the Magistrate Judge improperly characterized evidence from her various treatment providers in order to bolster the ALJ's decision, her argument is misplaced. The ALJ expressly rejected the medical reports of Dr. Kaplan in favor of the opinions from Dr. Nelson, Dr. Pearl and Dr. Orlow. (R. 386.) Plaintiff has not challenged this determination. Whether the Magistrate Judge may have misinterpreted some doctors' reports when reviewing the ALJ's credibility analysis is of no moment to the ultimate inquiry of whether the ALJ's analysis is supported by substantial evidence. Nor may the Court undertake a *de novo* review of the Commissioner's decision and re-weigh the evidence of record. See Monsour,

---

[6] When arguing that the ALJ's credibility analysis was inadequate, Plaintiff focuses entirely on several paragraphs of the ALJ's decision. In doing so, however, Plaintiff disregards the ALJ's discussion of the other medical findings which undermined Plaintiff's testimony and were simply incorporated by reference in the paragraphs on credibility.

[7] Under 20 C.F.R. § 416.929(c)(3), the kinds of evidence that the ALJ must consider in addition to the objective medical evidence, when assessing the credibility of an individual's statements include the individual's daily activity; location, duration, frequency and intensity of the individual's symptoms; factors precipitating and aggravating the symptoms; the type, dosage, effectiveness and side effects of medication taken to alleviate the symptoms; treatment, other than medication, received for relief of the symptoms; any non-treatment measures the individual uses to relieve pain or symptoms; and other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Id.  Moreover, the ALJ should account for the claimant's statements, appearance and demeanor; medical signs and laboratory findings; and physicians' opinions regarding the credibility and severity of plaintiff's subjective complaints. Weber v. Massanari, 156 F. Supp. 2d 475, 485 (E.D. Pa. 2001) (citing Social Security 96-7p, 1996 WL 374186 (S.S.A. July 2, 1996)).

806 F.2d at 1190.  Accordingly, we deny this objection.

> **E.   Whether the ALJ Failed to Comply with the Remand Order to Obtain a Medical Opinion Regarding the Additional Effects of Obesity on Plaintiff's Limitations.**

Finally, Plaintiff contends that the ALJ failed to properly assess the effects of Plaintiff's obesity when determining whether the combination of her impairments equaled a listing. Specifically, she argues that, in the initial R&R, Magistrate Judge Welsh implied that the ALJ should obtain an opinion from a medical expert regarding the impact of Plaintiff's obesity on both the listings analysis and residual functional capacity assessment.  As no such medical opinion was obtained and as the law requires that obesity be considered in the listings analysis, Plaintiff asserts that a second remand is necessary.[8]

This argument fails on several levels.  First, Plaintiff's contention that the remand order mandated that the ALJ obtain a medical expert to opine on the impact of obesity is misguided. Magistrate Judge Welsh merely noted that the ALJ neither mentioned that Plaintiff was obese nor inquired of the medical expert what additional effects Plaintiff's obesity caused.  (Welsh R&R 7.) As such, Magistrate Judge Welsh remanded for the ALJ to consider the impact of obesity at steps three (listings analysis) and five (residual functional capacity) of the sequential evaluation.  At no point was there any instruction, either express or implied, that another medical expert be obtained.

Nor does Plaintiff identify any clear legal obligation on the part of the ALJ to obtain a medical expert opinion.  Social Security Ruling 02-1p sets forth guidance for the evaluation of obesity in a social security claim.  SSR 02-1p, 2000 WL 628049 (S.S.A. Sept. 12, 2002).  This

---

[8] Defendant asserts that the Court should deem this argument waived since Plaintiff never raised it in her initial Request for Review brief.  The Court finds, however, that Plaintiff sufficiently presented the basis for this argument, despite the Magistrate Judge having not addressed the issue.

ruling recognizes that "[o]besity is a risk factor that increases an individual's chances of developing impairments in most body systems." Id. at *3. As there is no specific level of weight or body-mass index that equates with a "severe" or a "not severe" impairment, the ALJ must do an "individualized assessment of the impact of the obesity on an individual's functioning." Id. at *4. An individual with obesity may satisfy step three of the sequential analysis if the obesity increases the severity of a coexisting impairment to the extent that the combination of impairments meets or equals the requirements of the listing. Id. at *5. For example, if the obesity affects the musculoskeletal system because it impacts the ability to ambulate effectively, the resulting effects may equal the relevant requirements. Id. As "[o]besity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment," it is necessary to "evaluate each case based on the information in the case record." Id. at *6

"The administrative law judge or Appeals Council is responsible for deciding the ultimate legal question of whether a listing is met or equaled." Social Security 96-6p, 1996 WL 374180, at *3 (S.S.A. Jul. 2, 1996). "[W]here the administrative record is inconclusive as to whether a claimant's impairments are equivalent to an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, a medical expert should evaluate the impairments." Diehl v. Barnhart, 357 F. Supp. 2d 804, 815 (E.D. Pa. 2005). An opinion from a state agency physician regarding equivalence satisfies the ALJ's obligation to receive expert opinion evidence into record when finding that an individual's impairment is not equal in severity to a listed impairment. SSR 96-6p, 1996 WL 374180, at *3. An ALJ and the Appeals Council must obtain an updated medical opinion from a medical expert only where either (1) no additional medical evidence is received, but the case record suggests to the ALJ or Appeals Council that a judgment of equivalence may be reasonable or (2)

additional medical evidence is received that, in the opinion of the ALJ or Appeals Council, may change the state medical consultant's finding of non-equivalence. Id. at *3-4; see also Maniaci v. Apfel, 27 F. Supp. 2d 554, 557 (E.D. Pa. 1998).

In the case at bar, the ALJ, albeit somewhat cursorily, acknowledged that Plaintiff was obese, but nevertheless determined that she neither met nor equaled a listing. In doing so, the ALJ relied on the testimony from Medical Expert Dr. Nelson who opined, at the first hearing, that Plaintiff did not "even approach" Listing 1.04. (R. 337-339). When rendering that opinion, Dr. Nelson had read the medical records that repeatedly referenced obesity and was personally able to observe Plaintiff's physical appearance. Following remand, the ALJ expressly considered Plaintiff's obesity in his opinion, but found no additional medical evidence that would change Dr. Nelson's finding of non-equivalence, especially given the doctor's prior awareness of her condition. Nor did Plaintiff submit any additional evidence or argument to suggest to the ALJ that the impact of her obesity would require an equivalency finding.[9] As such, the Court cannot deem erroneous the ALJ's refusal to obtain an updated medical opinion.

Any tangential attempt by Plaintiff to argue that the ALJ also failed to include obesity when developing the residual functional capacity assessment is likewise mistaken. The Third Circuit has recognized that an ALJ's failure to explicitly discuss obesity, when not raised by the plaintiff, is not a sufficient reason for remand if it would not affect the outcome of the case. Rutherford v. Barnhart, 399 F.3d 546, 553 (3d Cir. 2005). Plaintiff never mentioned obesity as an impairment or limitation either in her Social Security application (R. 66), during her independent medical examination with

---

[9] Plaintiff again references her left knee impairment and her bilateral carpal tunnel syndrome. As noted above, however, the evidence establishes no functional limitations resulting from these two alleged conditions that would alter the equivalence analysis.

Dr. Pearl (R. 285-89) or during her consultative examination with Dr. Orlow. (R. 211-15.) Likewise, at the administrative hearing, she did not discuss how her obesity impaired her ability to work until, upon prompting by her attorney, she indicated that her condition was "a little worser" and "more painful" with her weight. (R. 336.) Moreover, the ALJ adopted the assessments of Dr. Kaplan (R. 194-95), Dr. Pearl (R. 285-89), Dr. Chalfin (R. 134-36) and Dr. Simmons (R. 126), all of whom were aware of Plaintiff's height and weight, but did not mention obesity as contributing to any impairment. Thus, even though the ALJ only briefly indicated that Plaintiff's obesity was being "taken into account" in reaching the conclusions about residual functional capacity, the ALJ's adoption of the various doctors' opinions constitutes a satisfactory consideration of the impairment. Sassone v. Comm'r of Social Security, 165 Fed. Appx. 954, 958 (3d Cir. 2006) (where claimant's physicians were aware of his weight problem, ALJ's discussion and adoption of their medical conclusions constitutes an "indirect consideration" of claimant's weight condition in his disability analysis."); Rutherford, 399 F.3d at 553 (concluding that, where the administrative record clearly shows the ALJ relied on medical evidence as the basis for his findings, the adoption of reviewing physicians' conclusions constitutes a satisfactory if indirect consideration of obesity).

### III.   CONCLUSION

For all of the reasons set forth above, this Court approves and adopts the Report and Recommendation issued by the Magistrate Judge suggesting that the Petitioner's Motion for Summary Judgment be denied. Accordingly, we affirm the decision of the Commissioner.

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LISA JENKINS, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | NO. 06-0987 |
| MICHAEL J. ASTRUE, COMMISSIONER | : | |
| OF SOCIAL SECURITY, | : | |
| | : | |
| Defendant. | : | |

# ORDER

AND NOW, this *8th* day of *January*, 2008, upon consideration of Plaintiff's Motion for Summary Judgment (Docket No. 8), the Report and Recommendation of the United States Magistrate M. Faith Angell (Docket No. 16), Plaintiff's Objections thereto (Docket No. 17), Defendant's Response to Plaintiff's Objections (Docket No. 18), Plaintiff's Reply to Defendant's Response to the Objections (Docket No. 19), and the entire record, it is hereby **ORDERED** that Plaintiff's Objections are **OVERRULED**, Report and Recommendation is **APPROVED** and **ADOPTED** and the Decision of the Commissioner is **AFFIRMED**.  This case is now **CLOSED.**

BY THE COURT:


 *s/ Ronald L. Buckwalter, S. J.*
 RONALD L. BUCKWALTER, J.